Act 900 of the Arkansas Code is preempted by the Medicare Modernization Act because it acts with respect to Part D plans in two respects. One, it mandates a minimum of reimbursement for pharmacies. It therefore interferes with Part D enrollees' access to negotiated prices. Two, it authorizes pharmacies to refuse to dispense Part D covered medications to Part D enrollees. It therefore interferes with Congress' intent to ensure enrollees with convenient access to covered medications. Is there a place in the record where I could find the precise provisions of Act 900 that you are challenging? Yes. They are attached to our main brief in the appendix. Is it the entire Act? It looked to me like it was the entire Act. Well, it is the entire Act, but there is particular focus on... Wait a minute. Preemption is specific. Yes. Are you invoking some sort of global thing that if we can knock out one provision, the whole statute goes? In fact, the statute is keyed on a key term called pharmacy acquisition costs. Is it your position that the entire statute is unconstitutional or is preempted? It is our position that it is preempted because it has one single overriding purpose, and under state law, the provisions are interrelated and interdependent. Give me your authority where you can identify, a court identifies an overriding purpose, and therefore the entire statute is unconstitutional. In the Supreme Court of Arkansas case, U.S. Term Limits v. Hill, 316 Arkansas... I'm in a federal case. They weren't talking about preemption, were they? Well, the issue is whether under state law there would be severability. And so we look to a state standard to determine whether the provisions... Oh, okay. I didn't see the briefing on severability. And there was no briefing on severability. I'm suggesting, Your Honor... All right. Well, I don't want to distract you, but I think you've got a problem there. HAC 900 has a key provision, which is the pharmacy acquisition cost. That provision is the key to the remaining provisions. It's a definitional provision. And the other provisions, particularly in C-4 of the Act, provide that if a pharmacy receives a reimbursement from a pharmacy benefit manager on behalf of a plan, then that is less than the acquisition cost, then the pharmacy under Act 900 has a number of rights. It can appeal the reimbursement. It can deny the dispensing to an individual who is at the counter. And it has certain other rights to information that is disclosed. It's our position, under the ERISA portion of our argument, that the decision of this court in PCMA v. Gerhardt is controlling. That's a case that was decided by this court just a year ago on a statute that was very similar in important respects to Act 900. And for the same reasons, Act 900 should be preempted under ERISA, just as the Iowa Code was preempted under Gerhardt. How did the Gerhardt preemption function? Explain how it functioned in that case. In Gerhardt, the court rested its decision on multiple grounds. No, no, not the grounds. How did it work? What happened after? What was knocked out and what wasn't? The statute was knocked out in its entirety and was not enforced thereafter. And the statute involved there is similar to exactly like the one that we're dealing with here? It is similar to and similar in the following respects. Like Act 900, the Iowa Code had a provision which entitled and directed pharmacy benefit managers in terms of how they should handle appeals of challenges to the rate of reimbursement. Like Act 900, it had a provision which directed PBMs to take into account certain information when calculating the reimbursement rates. I don't understand how ERISA preemption would knock out the applicability of either statute to non-ERISA plans. I'm not suggesting it does. You just said the entire statute was knocked out. That's what's confusing about the briefing here. The statute and the judgment we're requesting is that the statute would be preempted as to ERISA plans and as to Medicare Part D plans. And that's consistent with the ERISA judgment below. That's how the court framed it. And that's exactly what we would be seeking here. And that, too, is consistent with the judgment in Gerhardt. And then further, Your Honor, the Iowa statute, like Act 900, has certain obligations that it puts upon the PBM to make certain disclosures to pharmacies. And finally, Act 900, like the Iowa Code, applies solely to pharmacy benefit managers. And so for all those reasons, we think that there are great similarities. Well, how could the disclosure provisions be invalid insofar as they don't apply to Plan D or ERISA plans? Part D or ERISA plans? Again, Your Honor. What federal law preempts the requirement of disclosures when PBMs are functioning outside the world of Medicare and ERISA? Your Honor, we're not suggesting that they do. So the statute can exist outside of plans that are governed by those two provisions. As a matter of fact, on this record, the total number of plans in Arkansas covered by ERISA is 1.25 million individuals in a total population of approximately 3 million are covered by ERISA plans. And there's approximately another 400,000 Arkansas residents that are covered by Part D plans. PBMs only cover approximately 1.7 million of the residents, so you can see that if the law is inapplicable to ERISA and to Medicare, then it would have little application otherwise. But the state would be free to enforce it against PBMs when they are managing non-ERISA and non-Part D plans. Now, importantly... Well, if there is one non-preempted plan and the PBMs are required to make the disclosure, what's to prevent the state authorities from providing that information to a pharmacy serving a preempted plan? Your Honor, I agree that nothing is prohibiting the state from enforcing the statute in that circumstance. Importantly, on the Part D analysis, the court below determined that the reason that the act was not preempted was because the negotiated price standard, which is at the heart of our argument, has an exception. And the court focused on that exception to determine that Act 900 did not touch negotiated prices. We suggest that the court was in error for three reasons. In reaching that conclusion, it focused solely on the appeal provision of Act 900 and the exception that it relied upon, which is within the regulatory definition of negotiated price, holds that three conditions must be true for the exception. One, that the price cannot be reasonably be determined at the point of sale. The second, that the price, that the alternative pricing has an impact on efficiency. It improves efficiency and therefore lowers the price. The court focused on the appeal because it saw that as post-sale. But in fact, all the elements of the appeal can be determined at the time of sale. The acquisition price is the invoice price from the wholesaler, so it's known to the pharmacist. The reimbursement rate is communicated to the pharmacist at the point of sale. And the only third element for the calculation is whether the pharmacist is getting the wholesaler's best price. And again, in most instances, it is and that also would be known. But in any event, the court below only focused on the appeals and didn't focus on the other provisions of Act 900 where there is clearly knowledge at the time of sale. For example, the decline to dispense provision allows the pharmacist to deny a drug, a covered drug, to an individual who stands before them based on the information that the pharmacist has at the sale. The court did not consider that. Additionally, Act 900 in C4 of the provision has a provision that allows for the preemptive challenging of pharmaceutical, of the reimbursement prices. Again, the court didn't consider that either. And third, the law has a provision that says that after an appeal, if the pharmacy wins, then the PBM must disseminate that price broadly to others even though there hasn't been a challenge. So it didn't consider any of those. At the bottom line, as I understand some of your briefing, the pharmacy benefit manager can negotiate deals that are money-losing propositions to a pharmacy, and the pharmacist has to fulfill those deals. And if state law says, no, that's a bad thing, the ERISA law preempts any such control. That's your argument, as I understand it. Both under ERISA and under Part D. And the reason is because Congress made different choices regarding that. And the way that the pricing mechanism that is used by PBM's work is based on an average of acquisition costs. So when it's based on an average, that means some pharmacies are able to buy the pharmaceutical for less, some for more. And so it's a risk-sharing provision which incentivizes the pharmacist to look for the best price. And that kind of provision had been held and sustained by this court as preempted. A similar state provision which interrupted the incentivizing of providers was upheld in the St. Mary's case. Yes, Your Honor. So if the statute provides that, maybe we don't have a preemption problem. Maybe we have a constitutional problem of other proportions in this thing that lurks in here. Well, we at the district court, we did raise Commerce Clause and other issues regarding this. We didn't prevail on those and decided not to bring those before the court. But we think that the degree to which the Act 900 interferes with the negotiated price standard and also the pharmacy access standard, which is intended to provide enrollees with certainty when they go to a pharmacy, and to make sure that the pharmacist lives up to the contractual obligations that they have made in their agreements with the PBMs, turns that and makes the visit to the pharmacist an uncertain adventure, not knowing whether they will be served at the point of sale. Similarly, under ERISA analysis, we believe that these two provisions intrude upon central features of plan administration. In the cases by this court and Gerhardt, also held that the Iowa statute, under the connection with Prong, interfered with plan administration because it dictated. I still don't understand how this works. A negotiated price, that's in a contract between the pharmacy and the PBM, by which the pharmacy becomes part of the network? That's exactly right. So now under Act 900, what's the negotiated price? The same? No, under Act 900, the state replaces that with a price set between the wholesaler and the pharmacy. Why does the trial court focus on the appeal? It makes it sound like the negotiated price under the private contract still applies, but if the pharmacy chooses to appeal the answer, then Act 900 dictates the appeal. Right. So does it substitute for the negotiated price until there's an appeal, or does it? Well, we suggest that the court got that wrong because in authorizing... Well, do you think... I mean, PBMs have to follow their contracts like the rest of the world. Correct. Are they now under Act 900 until it's knocked out? Are they replacing their negotiated prices as a practical matter, day by day with the pharmacies? With the Act 900 prices? The record reflects that that is happening, that as an accommodation to what the law is, they are complying with the law, but they suggest that... So when the state argues that Congress has nothing to do with pricing and so there's no problem here, that's really not true because Act 900 is replacing a price, not just on appeal, but at the point of sale, at the time of sale. That's correct, Your Honor, and again, the best example of that is the authorization to the pharmacist that they can decline to serve someone they are contractually obligated to serve. But that's a different... that's not as overriding a fact as the negotiated price goes away. I mean, this is... I grew up in the antitrust era of resale price maintenance, which happened to be a federal law, but as a matter of fact, its roots were small-town druggists. So this reminds me of that quite a bit. It wasn't unconstitutional. It was contrary to the antitrust laws, but trumped the antitrust laws until it got repealed. That's what we have here, isn't it? Well, we have a statute of very special effect intended to benefit a narrow class of beneficiaries at the expense, we suggest, both of the federal system set by Congress and the consumers that are intended to serve. It also refers to a PBM windfall. What's your understanding of what they mean? My understanding, Your Honor, is they suggest that there is something called the spread, the difference between what the PBMs are obligated... what they receive from their clients, the health plans, and what they ultimately pay pharmacists. And they suggest, based on... Well, they are different contracts. They are definitely different contracts, Your Honor. And what the record reflects here is that the world of PBMs is, in fact, highly competitive. And so it's competitive at the level of obtaining clients that they can serve. And so if a PBM offers a health plan a better rate for their services, then they're going to lose that business. And an important part of the argument here is that the reason the negotiated price was set by Congress was to rely on market forces and competition. I got it. I got it. All right. So there are no further questions, Your Honor. In closing, Act 900 interferes with Part D's negotiated price standard and its pharmacy access standard. Accordingly, the Part D program preempts the act. Similarly, the decision of Gerhardt controls, and therefore the judgment below should be affirmed as to ERISA and reversed as to Part D. Thank you.  May it please the Court. States have traditionally been regulating health care and the dispensing of prescription drugs since time immemorial. Neither ERISA nor Medicare Part D changes this or prevents states from doing so. Your Honors, the PCMA asks this Court to fine for a very broad, far-reaching preemption doctrine that would eliminate virtually every type of health care regulation in the states. As to ERISA, isn't this panel preempted by Gerhardt in terms of the preemption effect of it? Not at all, Your Honor. PCMA v. Gerhardt should not be relied upon by this Court. Now, wait a minute. It's controlling authority, counsel. When you say shouldn't, that's telling me that you think it was wrong. I'm sure you think it was wrong, but it's controlling. Save your argument for the en banc court or distinguish it. That's what I was moving to, Your Honor. It is distinguishable. It doesn't look like it to me with the reasoning across the board. It was distinguishable, Your Honor, because Act 900 does not include the express reference to the ERISA law. That doesn't matter. Suppose that's not good enough as a distinction. I think that's a will-of-the-wisp distinction. In the Prudential v. National Park Medical Center, this Court made it plain that when an express reference exists, it will find the law to be preempted. But you want the converse to apply. Converses don't typically apply. But in PCMA v. Gerhardt, Judge Loken, the Court continued on to a connection with analysis, even though it need not do so. And that's what rendered the connection with analysis of the decision, which the Court recognized when it acknowledged that it need not proceed. That's what made that section of the decision dicta. But even if Gerhardt was wrong, this panel, as a subsequent panel under our rules, is bound by Gerhardt, right? Respectfully, no, Your Honor. This Court is not bound by non-controlling dicta because it is simply non-controlling. In this situation, when the Court proceeded on to the connection with analysis, the Gerhardt panel admitted that it was doing so unnecessarily. And even the PCMA in this case admits that that discussion of the connection with prong was dicta. Let's assume, let's say it's not dicta. Is there any significant difference between Gerhardt in this case? Yes, Your Honor. The Iowa law at issue in Gerhardt included very comprehensive reporting requirements. It required PBMs to report the proprietary pricing methodologies to the Iowa Insurance Commissioner. This was very intrusive. Act 900 requires no such reporting obligation. It also does not involve the calculating of benefit levels. The Gerhardt panel assumed that what a benefit plan does is calculate benefit levels. But calculating benefit levels is actually a measure of pension administration, not welfare plan administration. As such, the administration of a welfare plan is not what a PBM does at all. And this is what goes, that is to say, the plan administration. That's the key couple of words that were utilized in the Gerhardt decision. I didn't read it as the statute. I skimmed it. I didn't read it as requiring benefit levels. Exactly, Your Honor. And that is a distinguishing characteristic. No, I didn't read the Iowa statute as quoted in Gerhardt. That is indeed what the Gerhardt court found, Your Honor. And so the state of Arkansas was not. It requires a particular price or pricing methodology. On page 11 of the decision in Gerhardt, Your Honors, it went very clearly through the analysis discussing the benefit level analysis. And at the bottom line saying what? And saying that what the Iowa measure was doing was requiring the or interfering with plan administration, specifically with respect to determining plan benefit levels. And that simply is not something that is present in Act 900. It is quite different, Your Honors. It is a garden variety cost regulation. And in that event, with a state garden variety cost regulation on health care, the court should follow the Supreme Court's precedent on such claims, such as Travelers, Dillingham, and DiBuono. If this court applied the Gerhardt analysis on connection width to the DiBuono facts, then even DiBuono would be preempted. And so, Your Honors, the PCMA versus Gerhardt case is not one that should be applied in this case. Okay, now let's say you lose the ERISA argument. What's the significance of the Part D issue? Part D, Your Honor, follows within Medicare, which in its capstone headings declares that the federal government would not supersede state laws that regulate health care. Now that's important here because when the Part D program started, the Congress then declared that federal Part D standards supersede state laws and regulations with respect to a Part D plan. This court must necessarily determine what with respect to means. And this is the test that the state proposed. The practical significance. Nobody in this case wants to talk about the practicalities, and that's where we want to start. I'm sorry, Your Honor. What's the significance day in and day out if ERISA preempts and Part D doesn't? If ERISA preempts and Part D doesn't, then a pharmacy would be able to be reimbursed at fair rates. And right now Arkansas pharmacies are being crushed under the weight of PBM unfair reimbursements. Even with an ERISA plan? Yes, Your Honor. As to all plans. But if ERISA preempts as broadly as the Gerhardt quote dicta says, why doesn't that with respect to ERISA plans cover what you just said, what the pharmacy can recover? Your Honor, Act 900 does not discriminate on what basis, what legal regime applies to it. It simply requires that the PBM reimburse at fair rates. And this applies to any manner of delivery mechanisms. For example, Arkansas has health-related cash discount cards. These cards aren't health-insured plans at all. They're not ERISA. They're not Part D plans. These are simply cards that a pharmacy distributes at the till of their register or at their pharmacy. And they give the consumer immediate relief. Those cards are negotiated through PBMs. And the same act here would act with respect to those programs as well. It simply doesn't discriminate. And one of your arguments in favor of what you're saying is the demise of numbers of rural pharmacies. Yes, Your Honor. Is that right? And as I recall, that was over a period of 12 or 16 years of the period that you talked about. Ten years, Your Honor. Okay. I think if you apply the migration of people off the farm because farm operations have been bigger and bigger and two people operate what eight or ten people did before, the population in those areas has gone away. And that may be and probably is the reason for them to go out of business rather than the result of this act. The record simply reflects, Your Honor, that pharmacies have been closing. And the pharmacies are in peril. Small businesses have been closing in agricultural areas all over America. And perhaps at a higher rate. I was surprised that it was that few, actually.  There were 455 beginning in 2005. And then 57 of them closed during the following ten years. This is an issue that affects the public health in Arkansas to a significant degree because it prevents consumers from having access to the vital medications should their pharmacy close. And they have to go somewhere else. If a pharmacy goes through the appeal process on a price, according to Act 900, they always win. Is that fair? No, Your Honor. If the PBM can demonstrate to the pharmacy that there is an available source for that drug at the price that supports the reimbursement from the PBM, then the pharmacy loses. The pharmacy should have bought it at that price. I thought it was the pharmacist wholesaler's price that drives the appeal under Act 900. Only if the PBM cannot demonstrate that there is a source for that drug that is available. You see, as a factual matter, what was happening was pharmacies were going and getting their inventories ahead of time and then being reimbursed at a lower amount by the PBM. And so they couldn't keep up with the ways that the PBMs were representing the drug prices because the PBMs were basing them on figures that pharmacies didn't have access to or that pharmacies couldn't see. And so it was like fighting with a ghost. So what the pharmacies needed was some objective criterion on which to base that appeal. And this was the only way to do it. Why didn't they go to Congress and amend the federal legislation? You have congressmen out there, don't you? Yes, Your Honor. But Congress did not intend to regulate state drug prices. With respect to the negotiated prices provision, which the PCMA identified as Congress solves this problem for agricultural states, they wouldn't have to worry about that, would they? The state wouldn't have to be in the act, would they? That's right, Your Honor. But Congress was silent here on this particular point, that with respect to Medicare Part D, Congress did not regulate state drug prices. That is to say that it did not prohibit the state from doing so. But it authorized the agency to set up the MAC negotiated price regime, didn't it? The negotiated prices. You don't argue that the agency went beyond its statutory authority. No, Your Honor, that is not. You just say, well, those are negotiated prices, and that's different than telling the state what it can't do, which I think is not logical to me. Your Honor, the prices negotiated between pharmacies and PBMs are not set prices. They are fluid. And so in a contract, there is. Yes, but by federal regulatory design. And Arkansas steps in and says, no, you can't have a negotiated price system. You will function by our prices. Your Honor, Congress has. And to say that that isn't in conflict with the federal regime just doesn't compute to me. Your Honor, the Congress has declared that the federal government shall not interfere in the negotiation between pharmacies and PBMs. It has not declared that the states must remain free from doing so. Importantly, if we imply the express preemption provision under Part D quite plainly, it yields a test that the state regulation must impose a duty on a Part D plan as a point number one, and number two, that that duty overlaps with the Part D standard. Here, with respect to this discussion, Judge Loken, there is no overlap between Act 900 and that federal standard of negotiated prices because negotiated prices only guarantees access to some sort of a price that's not a cash price. It guarantees them to the amount that the pharmacy would have otherwise received from the PBM on the transaction. So when the senior hits the benefit cap, they don't have to pay the full cash price. This is what federal antitrust law is all about, is to prevent anyone from dictating a price so that the marketplace provides the consumer the best price. But, Your Honor, the federal government doesn't dictate the exact price. No, that's right. That's just like the don't-fix-prices antitrust laws. The government is saying, no, governments, neither we and implicitly the states, should be dictating prices. The marketplace does that. Your Honor, but the Congress has not said that the states may not do so. In 2009, even... Well, that's, you know, the statute, the preemption issues are never that cut and dry. But the Medicare preemption issue, Your Honor, is quite specific. And it looks at that federal standard to determine whether or not there is some overlap. I thought it was with respect to. It is with respect to, Your Honor. Well, with respect to couldn't be broader. Your Honor, with respect to means when it refers to a standard, it means it has to act with respect to something that is a confined standard. And that confined standard here... We have a marketplace standard, and it's being replaced by a state-dictated standard. That strikes me as with respect to. Respectfully, no, Your Honor. The federal Part D standard only supersedes state laws with respect to a Part D plan. And what that means is that there has to be some standard that actually it acts within the confines of. Here, lest there be any confusion, the CMS's final rule determining in 2009, defining what negotiated prices means, it stated specifically in the Code of Federal Regulation that the definition of negotiated prices would not interfere with negotiation between Part D sponsors, PBMs, and pharmacies. It didn't limit the states from doing so. And even CMS itself has remained free from interfering in that negotiation for that reason. States exercise this space because it is a traditionally regulated area for states, the dispensing of drugs, and the regulation of health care. On the pharmacy network standard, the same analysis applies. There is simply no overlap between Part D and the decline to dispense provision of Act 900. And this, Your Honors, is because the pharmacy network standard only applies to Part D sponsors, not to PBMs. Act 900 only regulates PBMs. If a third-party administrator stands in the shoes of the sponsor under ERISA, I don't understand this argument that you can somehow say, well, they're not a sponsor so we don't have to worry about the preemption. Your Honor, there is a difference between the function of a PBM and a health plan. And that's something that even in the Gerhardt decision, what the court did on of the pharmacy benefits aspect of health plan administration. That's right, Your Honor. It referred to them as plan administrators. And what that allowed the court to do was then proceed on to a connection with analysis simply by finding that the express reference existed. At the top of page 11, when the court acknowledged that this argument is foreclosed by our discussion above, the court determined that PBMs and health plans were the same because the law in Iowa regulating PBMs, included a reference to ERISA. And by doing so, it proceeded to connect them. You can't swing it around that way. We were talking about Part D. And you were talking about it's only sponsors and it's not third-party. Yes, Your Honor. Administrators. I mean, they're administrating the pharmacy benefits aspect of the Part D plan. But, Your Honor, when Congress put forward Part D and it established the pharmacy network standard, it spoke quite plainly and expressly. And Congress's words should be interpreted for exactly what they mean. When it put the requirement on a Part D plan sponsor for network standard, then that's exactly what Congress intended. Here, the district court rightly found that declining a prescription doesn't remove the pharmacy from the network either. Under the current regime. So if you have a sponsor that delegates everything administrative and benefit dispensing to third parties, there's no impact? Not under the express intention of Congress, Your Honor. It's in the black and white language of the statute. And that's why it only applies to Part D sponsors. States should have the ability to regulate this largely unregulated area of pharmacy benefits management. But you concede they can't regulate sponsors. But you're saying that because of your notion of what express language means, they can regulate anybody that the sponsor delegates its responsibilities to. But, Your Honor, the state does not concede that they can't regulate sponsors either. That's what you've just been arguing. Under Part D, there might be some situations where there is no overlap. That is true. But under ERISA, whenever we're dealing with a cost regulation. I'm talking about Part D. Under Part D, there are situations so long as there is no overlap between the standards. That is true. But, Your Honors, this largely unregulated area of pharmacy benefits management has found itself free from general jurisdiction of the courts by claiming that they are preempted from common law claims. And whenever states try to regulate them, they claim preemption. Additionally, in their contracts with their health plans, they disclaim fiduciary duties. And what that means is that a person who sues under ERISA would likewise not be able to bring a claim against a pharmacy benefit manager. Being free from regulation, free from suit, PBMs have been able to reimburse unfairly pharmacies for years. And it is leading to this crisis in Arkansas' pharmacy health care delivery system. In Arkansas, Dr. Robert Geyer, one of the declarants in this case, he is a pharmacy in a community of 6,000 people in Mena, Arkansas. In three months, he lost $1,829 to negative reimbursements. That's just the amount for the under reimbursement. It does not include what it takes for him to pay his light bill, his water bill, overhead, and everything else. But lest we think that it only affects the small pharmacy, even Walmart, in its second quarter earnings report in 2015, acknowledged that the three loss leaders for Walmart were under reimbursement by pharmacy benefit managers, inventory shrinkage, and unexplained declines in gross margin. They specifically identified that as a major problem. Your Honors, to preempt in this case is to intrude on traditional states' rights to regulate health care and pharmaceutical dispensing. And I present to you this idea. This is actually a quite simple case, despite all of the code of federal regulation, all of the Medicare laws that we've had to look at, that where a state measure acts independently of health plans and only upon servicing entities, there is no preemption of state-based garden variety regulation. Thank you, Your Honors. I ask you to find in favor of the district court's decision finding that Part D does not preempt Act 900 and to reverse the district court's decision regarding a risk of preemption. Thank you. Thank you. I'll give you two minutes for rebuttal if you'd like, but this is complicated. But your time is used up, so you don't need to do it. I appreciate that, Your Honor. Thank you. Thank you, Counsel. The case has been thoroughly briefed and helpfully argued, and it's complicated.